UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

JAMES McDOUGLE,

       Defendant.

_____/

Case No. 19-20323
HON. VICTORIA A. ROBERTS

**<u>MEMORANDUM OPINION</u>**

This matter is before the Court for sentencing. This opinion addresses whether James McDougle's ("McDougle") prior state conviction under MCL § 333.7401 qualifies as a "controlled substance offense" within the meaning of United States Sentencing Guideline ("USSG") §4B1.2(b). The Court finds *United States v. Havis,* 927 F.3d 382 (6th Cir. 2019) controls and McDougle's prior conviction does not qualify as a controlled substance offense under the federal sentencing Guidelines.

I.    **BACKGROUND**

McDougle objects to the calculation of his base offense level. Both his Rule 11 plea agreement and the Probation Department found the advisory guideline range to be 37 to 46 months. This guideline range was arrived at by beginning with the base offense level for a conviction under 18 U.S.C. §

1

922(g)(1), found at USSG §2K2.1. A person convicted under § 922(g)(1) begins with a base offense level of 14, but the level increases to 20 if the defendant has a prior conviction for a crime of violence or a controlled substance offense. *See* USSG §2K2.1.

Both the Rule 11 agreement and the Probation Department believed McDougle's prior conviction for Delivery/Manufacture of Marijuana in 2010 in the Macomb County 16th Circuit Court under docket No. 2010-2977-FH qualified as a controlled substance offense, rendering a base offense level of 20.

McDougle acquiesced to this base offense level when he signed his Rule 11 agreement and pled guilty on November 18, 2019. However, McDougle now objects to that calculation based on the Sixth Circuit's decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019), filed on July 12, 2019. McDougle says that under *Havis*, his prior Delivery/Manufacture of Marijuana conviction does not qualify as a "controlled substance offense," and his base offense level should be 14 rather than 20. *See* USSG §2K2.1(a)(6).

The Government urges the Court to reject McDougle's argument because: (1) he conceded he would not take a position concerning the applicable guidelines that is different from any position as reflected in the

Rule 11 plea agreement; and (2) *Havis* is not binding because it did not decide whether the Tennessee statute at issue actually criminalized attempted delivery.

Following the guidance of *Havis,* the Court declines to assess additional base offense level points for McDougle's prior drug offense.

## II. ANALYSIS

### A. The Court Considers McDougle's Objection Despite His Rule 11 Plea Agreement Concession

The Government argues in supplemental briefing that McDougle's objection should be rejected because he conceded in his Rule 11 plea agreement that he would not take a position concerning the applicable guidelines that is different from any position as reflected in the plea. [ECF No. 29, PageID.98]. It cites to *United States v. Fleming,* 239 F.3d 761, 763-64 (6th Cir. 2001). The Sixth Circuit found that the district court's *pro forma* announcement that Fleming had a right to appeal did not void his knowing and intelligent waiver of appellate rights in his plea agreement.

*Fleming* is inapplicable and has nothing to do with each sentencing court's obligation to begin the sentencing hearing with properly calculated guidelines.

District courts must determine a sentence that is "sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), to achieve the overarching

3

sentencing purposes of "retribution, deterrence, incapacitation, and rehabilitation." *Tapia v. United States,* 564 U.S. 319, 325 (2011). "To ensure 'certainty and fairness' in sentencing, district courts must operate within the framework established by Congress." *Rosales-Mireles v. United States,* 138 S.Ct. 1897, 1903 (2018) (quoting *United States v. Booker,* 543 U.S. 220, 264 (2005) (internal citation omitted)). The Sentencing Guidelines are important to that framework. *Id.* Though district courts are not bound by the Guidelines, they are a "meaningful benchmark" in the initial determination of a sentence and the Court must begin its analysis with the Guidelines. *Id.* at 1904 (quoting *Peugh v. United States,* 569 U.S. 530, 541 (2013) (internal citation omitted)).

Importantly, the district court "has the ultimate responsibility to ensure that the Guidelines range it considers is correct, and the '[f]ailure to calculate the correct Guidelines range constitutes procedural error.'" *Rosales-Mireles,* 138 S.Ct. at 1904 (quoting *Peugh,* 569 U.S. at 537).

The Court resolves McDougle's sentencing objection to ensure his guideline range is correct.

### B. USSG §4B1.2 and *United States v. Havis,* 927 F.3d 382 (6th Cir. 2019)

Section 4B1.2 defines a "controlled substance offense" as:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export,

4

> distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

The commentary to this section provides that a controlled substance offense includes "the offenses of aiding and abetting, conspiring, and attempting to commit such crimes." §4B1.2 cmt. 1.

*Havis* construed a Tennessee statute nearly identical to the Michigan statute McDougle was convicted under in the context of USSG §4B1.2(b). Like McDougle, Havis pled guilty as a felon in possession and was subject to the same guideline in the calculation of his base offense level. Havis had a prior conviction, too, - for selling/delivering cocaine. At sentencing, Havis objected to the Court using that prior conviction to set his base offense level at 20. He argued that the Tennessee statute criminalized both the "sale" and "delivery" of cocaine, and his charging documents did not specify what his conviction was for.

*Havis* also argued that under the Tennessee statute, "delivery" of drugs means "the actual, constructive, or *attempted* transfer from one person to another of a controlled substance," Tenn. Code Ann. § 39-17-417(a)(2)-(3) (emphasis added). Given that definition, Havis said his prior conviction was not a controlled substance offense because it encompassed the mere

5

attempt to sell cocaine, and the Guidelines' definition of "controlled substance offense" does not include attempt crimes.

In *en banc* review, the Sixth Circuit agreed with Havis. It held that the text of 4B1.2(b) controlled, and that the text made clear that attempt crimes do not qualify as controlled substances offenses. Since the text of the Guidelines says nothing about attempt - and the Sentencing Commission has no power to add attempts to the list of offenses in §4B1.2(b) through its commentary - the Sixth Circuit reversed the district court decision to use Havis' prior conviction to increase his base offense level. *Havis,* 927 F.3d at 387.

McDougle's case is nearly indistinguishable from *Havis*. The Michigan statute he was convicted under is substantially identical to the Tennessee statute at issue in *Havis.*

### C. MCL § 333.7401: Manufacturing, Creating, Delivering, or Possessing with Intent to Manufacture, Create, or Deliver Controlled Substance

MCL § 333.7401 says:

> (1) Except as authorized by this article, a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance, a prescription form, or a counterfeit prescription form. A practitioner licensed by the administrator under this article shall not dispense, prescribe, or administer a controlled substance for other than legitimate and professionally recognized

6

>> therapeutic or scientific purposes or outside the scope of practice of the practitioner, licensee, or applicant.

"Delivery" is defined in another statute, MCL § 333.7105(1), as "the actual, constructive, or attempted transfer from 1 person to another."

The Government argues that an important distinction between *Havis* and McDougle is that the parties in *Havis* agreed that the least culpable conduct covered by the Tennessee statute is the attempted delivery of a controlled substance; it says the Sixth Circuit did not make that finding, and that there is no such agreement in this case.

The Government asks the Court to do what it says *Havis* failed to do: decide whether the least culpable conduct encompassed by McDougle's conviction is a completed delivery or an attempted delivery. The Court declines to follow that advice; it need not find that attempted delivery is the least culpable conduct punished by MCL § 333.7401. Rather, it looks only to the elements of MCL § 333.7401 and finds that the statute criminalizes attempted delivery. Because the Guidelines definition of "controlled substance offense" does not include attempt crimes, the Michigan statute is too broad to categorically qualify as a controlled substance predicate under the Guidelines.

7

### 1. MCL § 333.7401 Criminalizes Attempted Delivery

To determine whether a prior conviction constitutes a "controlled substance offense" under the Guidelines, the Sixth Circuit requires courts to use the categorical approach, "'limited to an examination of the fact of conviction and the statutory definition of the predicate offense.'" *United States v. Butler,* 207 F.3d 839, 843 (6th Cir. 2000) (quoting *United States v. Arnold,* 58 F.3d 1117, 1121 (6th Cir. 1995)). The court focuses on whether the elements of the crime of conviction sufficiently match the elements of the generic federal definition of a corresponding offense – "controlled substance offense" as defined under the Guidelines. *See Moncrieffe v. Holder,* 569 U.S. 184, 190 (2013).

Under the categorical approach, courts do not examine the underlying facts of the prior conviction; instead, courts "must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Id.* at 191 (quoting *Johnson v. United States,* 559 U.S. 133, 137 (2010)). The court's focus on the "minimum conduct criminalized" is "not an invitation to apply 'legal imagination' to the state offense; there must be a 'realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic

definition of a crime.'" *Id.* (quoting *Gonzales v. Duenas-Alvarez,* 549 U.S. 183, 193 (2007)).

Some statutes make the comparison of elements complicated. These statutes are called "divisible statutes;" they list elements in the alternative "and thereby define multiple crimes." *Mathis v. United States,* 136 S.Ct. 2243, 2249 (2016). The Supreme Court instructs courts to use the "modified categorical approach" to examine divisible statutes. *Id.* at 2249. The court can then compare that crime "as the categorical approach commands," with the relevant generic offense. *Id.*

The Sixth Circuit has repeatedly held that MCL § 333.7401 is divisible. *See United States v. Tibbs,* 685 F. App'x 456 (6th Cir. 2017); *United States v. House,* 872 F.3d 748 (6th Cir. 2017); and *United States v. Pittman,* 736 F. App'x 551 (6th Cir. 2018). It applies to the manufacture, creation, delivery, or possession with intent to manufacture, create, or deliver a controlled substance. Because MCL § 333.7401 is divisible, the Court must examine the prior conviction under the modified categorical approach to determine what specific crime McDougle was convicted of.

Under the modified categorical approach, "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what

elements, a defendant was convicted of." *Mathis,* 136 S.Ct at 2249 (internal citations omitted). The modified categorical approach "serves – and serves solely – as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque…it is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense." *Mathis,* 136 S.Ct. at 2253.

The Probation Department determined that McDougle was convicted of delivery/manufacture of marijuana. Now the Court compares that crime – delivery/manufacture – to the definition of "controlled substance offense" in the Guidelines. *See Mathis,* 136 S.Ct. at 2249.

McDougle directs the Court to *United States v. Hinkle,* 832 F.3d 569 (5th Cir. 2016). There, the court analyzed a Texas statute prohibiting a person from knowingly manufacturing, delivering, or possessing with intent to deliver a controlled substance. *Id.* at 572. A separate Texas statute defines "deliver" as "to transfer, actually or constructively, to another a controlled substance…[t]he term includes offering to sell." *Id.* (quoting Texas Health & Safety Code § 481.002(8)). The government conceded that if Hinkle was convicted of delivering a controlled substance by "offering to sell" the

10

substance, the crime would not come within the definition of a "controlled substance offense" under USSG §4B1.2. But it argued that the Texas indictment under which Hinkle was convicted did not charge him with offering to sell. Instead, it charged him with knowingly delivering a controlled substance by "actually transferring" it. *Id.*

Guided by *Mathis*, the Fifth Circuit found Texas state courts construing the relevant statutes held the *methods* used to deliver a controlled substance is not an element of the crime. Instead, the definition of "delivery" lays out alternative ways of satisfying the single element of delivery. Because "offering to sell" is not included within the Guidelines definition, the Fifth Circuit found "[t]he 'delivery' element of Hinkle's crime of conviction criminalizes a 'greater swath of conduct than the elements of the relevant [Guidelines] offense.'" *Id.* at 576 (quoting *Mathis,* 136 S.Ct. at 2251)).

The Sixth Circuit discussed *Hinkle* in *United States v. Tibbs,* 685 F. App'x. 456 (6th Cir. 2017). Tibbs argued a prior felony conviction under MCL § 333.7401 – the same statute McDougle's prior conviction is under – was not a proper career-offender predicate because the statute is overbroad. While the Court found that Tibbs' reliance on *Hinkle* was misplaced because of his specific arguments, however, it did not disagree with the Fifth Circuit's finding that "delivery" as used in the Texas statute is indivisible.

11

More recently, the Sixth Circuit examined whether a state statute qualified as a "crime of violence" under the Guidelines. In *United States v. Burris,* 912 F.3d 386 (6th Cir. 2019), the Sixth Circuit wrote:

> The question for the sentencing court in the elements-clause context is whether every defendant convicted of that state or federal felony *must have* used, attempted to use, or threatened to use physical force against the person of another *in order to have been convicted*, not whether the particular defendant *actually* used, attempted to use, or threatened to use physical force against the person of another *in that particular case*. (internal citation omitted). If the answer to that question is "no," and the statute forming the basis for the defendant's previous state or federal felony conviction criminalizes conduct that does not involve "the use, attempted use, or threatened use of physical force against the person of another," then a conviction under that statute may not serve as a violent-felony predicate under the elements clause, assuming that statute is an " 'indivisible' statute—*i.e.*, one not containing alternative elements." (internal citation omitted).

*Burris,* 912 F.3d at 392 (emphasis in original).

The lesson of the *Mathis* court is that there is a difference between alternative elements of an offense and alternative means of satisfying an element. *Id.* at 2250.

In the spirit of *Mathis* and *Burris,* the Court examines whether the definition of "delivery" under Michigan law encompasses more than the Guidelines tolerate as a qualifying offense.

12

Michigan courts construing MCL § 333.7401 hold that the method used to deliver a controlled substance is not an element of the crime; rather, the methods used to deliver are alternative ways to satisfy the single element of delivery. *See People v. Reddish,* 450 N.W.2d 16, 17 (Mich. Ct. App. 1989) (defendant convicted of attempted delivery under MCL § 333.7401(2)(a)(iv)); *People v. Bartlett,* No. 198823, 1999 WL 33444176, at *1 (Mich Ct. App. May 21, 1999) (defendant convicted of attempted delivery under MCL § 333.7401(2)(a)(iv)); *People v. Hernandez,* No. 247705, 2004 WL 2239482, at *1 (Mich. Ct. App. Oct. 5, 2004) (defendant convicted of attempted delivery of marijuana under MCL § 333.7401(2)(d)(iii)).

Of interest is the Michigan Model Criminal Jury Instruction 12.2, which is recommended to be given to jurors who are the fact finders in cases charging a delivery violation under MCL § 333.7401. The jury instruction reads in pertinent part that the prosecutor must prove beyond a reasonable doubt that the defendant "delivered" – meaning the defendant "transferred or *attempted* to transfer the substance to another person." M Crim JI 12.2 Unlawful Delivery of a Controlled Substance (emphasis added). It also reads "[b]ecause the statutory definition of *delivery* includes actual, constructive, or attempted transfer of a substance, attempted delivery is not a lesser included offense." *Id.* (citing MCL § 333.7105(1)).

Clearly, the factfinders in trials in Michigan state courts involving delivery of a controlled substance are not asked to distinguish between an attempted transfer or actual transfer of drugs to find a defendant guilty of delivery. By the same token, a federal sentencing court cannot improperly divide a statute in order to impose a greater penalty than the federal sentencing Guidelines allow.

The Court finds that the definition of "delivery" is indivisible and criminalizes attempted delivery, which is outside the conduct criminalized by the Guidelines. McDougle's prior conviction was under a Michigan statute that clearly is too broad to categorically qualify as a controlled substance offense within the meaning of USSG §4B1.2.

### 2. Judge Sutton's Concurrence is Not Binding on the Court

The Government points to Judge Sutton's concurrence in the Sixth Circuit's denial of *en banc* reconsideration of its decision in *Havis.* There, the Government argued for the first time that attempt crimes do fall within the guidelines' definition of a controlled substance offense because "distribution" as used in the definition of "controlled substance offense" covers attempts. Judge Sutton disagreed, but discussed the difference between completed and attempted offenses. Judge Sutton's concurrence focuses on the Controlled Substances Act, which makes it unlawful to "manufacture,

distribute, or dispense" certain drugs. 21 U.S.C. § 841(a)(1). The Act defines "distribute" as "to deliver." 21 U.S.C. § 802(11). "Deliver" is defined as "the actual, constructive, or attempted transfer" of a controlled substance. *Id.* at § 802(8). Judge Sutton noted, based on the definition of "distribution," an individual can complete the offense of distributing drugs by attempting to transfer drugs. *United States v. Havis,* 929 F.3d 317, 319 (6th Cir. 2019).

Despite Judge Sutton's opinion, the construction of The Controlled Substances Act is not before the Court. What is before the Court is a Michigan statute that is equivalent to the Tennessee statute in *Havis*, where the Court held that attempt crimes are not criminalized under the Guidelines.

### III.  CONCLUSION

Because the definition of "delivery" under MCL § 333.7107 includes the attempted transfer of a controlled substance, the Court finds that McDougle's conviction under that statute cannot be used to increase his offense level. *United States v. Havis,* 927 F.3d 382 (6th Cir. 2019). The Court will not rely upon a statute that criminalizes conduct outside the Guidelines to establish an increased base offense level.

McDougle's base offense level is reduced from 20 to 14. This reduces his offense level to 13 (base offense level +14; Stolen Firearm +2, Acceptance -3). The resulting sentencing guideline range is 18 to 24 months.

**ORDERED.**

Date: July 6, 2020                              s/ Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge